IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEEADRALYNN B.,[1]

Plaintiff,

v. 1:25-cv-00610-JCH-JMR

FRANK BISIGNANO, Commissioner
of the Social Security Administration,

Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Plaintiff Deeadralynn B.'s Opening Brief ("Motion") (Doc. 20), which was fully briefed on April 6, 2026. *See* Docs. 26, 27. Pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3), Senior District Judge Judith C. Herrera referred this matter to me for a recommended disposition. Doc. 16. Having meticulously reviewed the record, read the briefing, and being fully advised in the premises, I recommend finding that the Administrative Law Judge ("ALJ") erred by failing to adequately consider Plaintiff's mental impairments in formulating her residual functional capacity ("RFC"). I further recommend that the Court remand this matter to the Commissioner for further administrative proceedings rather than for an immediate award of benefits.

[1] Due to sensitive personal and medical information contained in this opinion, the Court uses only the Plaintiff's first name and last initials. In so doing, the Court balances the Plaintiff's privacy interest in her personal medical information, *United States v. Dillard*, 795 F.3d 1191, 1205–06 (10th Cir. 2015), and the public's interest in accessing the opinion, FED. R. CIV. P. 5.2(c)(2)(B).

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation modified). The Court must meticulously review the entire record, but it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (quotation omitted). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* (quotation omitted). While the Court may not reweigh the evidence or try the issues *de nov*o, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citation omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

[3] Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1.

## III. Background and Procedural History

Plaintiff was born in 1984, attended school through the tenth grade, and worked as an administrative assistant, customer service representative, and an import-export clerk. AR 48–50, 368.[4] Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on December 4, 2020—alleging disability since June 18, 2020, due to psoriatic arthritis, rheumatoid arthritis, depression, anxiety, restless leg syndrome, and hearing loss. AR 304–28, 367, 374. The Social Security Administration ("SSA") denied her claims initially on September 8, 2021. AR 212–20. The SSA then denied her claims on reconsideration on August 15, 2023. AR 224–28. Plaintiff requested a hearing before an ALJ. AR 231–32. On April 15, 2024, ALJ Janice Holmes held a telephonic hearing. AR 42–70. ALJ Holmes issued an unfavorable decision on May 29, 2024. AR 20–34.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 18, 2020. AR 25. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative joint disease/osteoarthritis of the knees; inflammatory arthritis; rheumatoid arthritis; and obesity. AR 25. The ALJ found that Plaintiff's medically determinable mental impairments of posttraumatic stress disorder, major depressive disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder were non-severe impairments. AR 26–27. At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. AR 27–28. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Plaintiff's RFC. AR 28–33. The ALJ found Plaintiff had the RFC to

---

[4] Document 9 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except no climbing; only occasional stooping and crouching, but no kneeling and crawling; frequent handling and fingering with the right upper extremity; must avoid concentrated exposure to extreme cold, wetness, and humidity; and would need to avoid hazards such as heights, moving mechanical parts, and operating motor vehicles.

AR 28.

At step four, the ALJ concluded that Plaintiff could perform her past relevant work as a foreign clerk. AR 33–34. The ALJ therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 18, 2020, through the date of [the ALJ's] decision." AR 34.

On July 25, 2024, Plaintiff requested review of the ALJ's unfavorable decision by the Appeals Council. AR 302–03. On April 30, 2025, the Appeals Council denied the request for review. AR 1–6. Plaintiff timely filed her appeal to this Court on June 27, 2025.[5] Doc. 1.

## IV. Plaintiff's Claims

Plaintiff argues that the ALJ's decision should be reversed and remanded for four reasons. Doc. 20 at 14–25. Plaintiff first argues that the ALJ "erred by mischaracterizing [Plaintiff's] activities of daily living." *Id.* at 14–16. Second, Plaintiff contends that the ALJ "erred in failing to find any of [Plaintiff's] mental impairments to be severe and failing to incorporate any mental limitations into the RFC assessment." *Id.* at 16–19. Third, Plaintiff argues that the ALJ "erred in discrediting the opinion of consultative examiner, John [] Owen, Ph.D." *Id.* at 20–24. Fourth, Plaintiff argues that the ALJ "erred in evaluating the manipulative limitations contained in the RFC." *Id.* at 24–25. Plaintiff asks the Court to remand this case to the Commissioner for an immediate award of benefits, or alternatively, a rehearing. *Id.* at 25.

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. §§ 416.1481, 404.981; *see also* AR 2.

For the reasons discussed below, I recommend finding that the ALJ erred by failing to adequately consider Plaintiff's mental impairments in formulating her RFC and further finding that this error was not harmless. The Court need not address Plaintiff's remaining claims of errors because they "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. Analysis

Plaintiff argues that the ALJ erred at step two in concluding that her medically determinable mental impairments of posttraumatic stress disorder, major depressive disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder were non-severe impairments. *See* Doc. 20 at 16–18. Plaintiff also argues that the ALJ "ignore[ed] [her] mental impairments" in formulating her RFC. *Id.* at 19. Specifically, she contends that the ALJ failed to explain how her "mental impairments, even if properly found [to be] non-severe, were factored into the ultimate RFC finding." *Id.* at 18–19. I recommend finding that the ALJ failed to adequately consider Plaintiff's mental impairments in formulating her RFC. I further recommend finding that the error was not harmless.

### A. Applicable Legal Standards

This claim of error involves the different methods by which an ALJ must analyze mental impairments at steps two and four. At step two, an ALJ must determine whether the claimant has any medically determinable impairments or combination of impairments, and if so, whether they are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An ALJ uses a "special technique" to evaluate the severity of mental impairments at step two. *Martinez v. O'Malley*, No. 1:23-cv-00093-MLG-KK, 2024 WL 808868, at *8 (D.N.M. Feb. 27, 2024) *adopted by* 2024 WL 5715912 (D.N.M. Mar. 13, 2024). This technique requires the ALJ to "rate the degree of

functional limitation resulting from" any medically determinable mental impairment in "four broad functional areas." 20 C.F.R. §§ 404.1520a(b)–(c), 416.920a(b)–(c). Limitations in each area must be rated as "[n]one, mild, moderate, marked, [or] extreme," and if the ALJ rates the limitation as "none" or "mild," the ALJ generally concludes that the impairment is not severe. 20 C.F.R. §§ 404.1520a(c)(4), 404.1520a(d)(1), 416.920a(c)(4), 416.920a(d)(1).

While a claimant must have at least one severe impairment or combination of impairments for the ALJ to proceed past step two, the ALJ must consider all of the claimant's medically determinable impairments in formulating the RFC at step four. *Martinez*, 2024 WL 808868, at *8; 20 C.F.R. § 404.1545(a)(2) (noting that the ALJ will consider all medically determinable impairments, even those that are not severe, in formulating the RFC); 20 C.F.R. § 416.945(a)(2) (same).

The criteria used to assess mental impairments at step two are "not an RFC assessment" and are insufficient to satisfy the ALJ's duties at step four. *Martinez*, 2024 WL 808868, at *8–9 (quoting SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)). Indeed, "the Tenth Circuit has held that, when an ALJ finds one or more mild restrictions in a claimant's four broad areas of mental functioning due to a non-severe mental impairment at step two, [s]he must further analyze the impairment's work-related impact in formulating the claimant's RFC at step four." *Id.* at *9 (citing *Wells v. Colvin*, 727 F.3d 1061, 1064–65, 1068–69 (10th Cir. 2013); *McFerran v. Astrue*, 437 F. App'x 634, 638 (10th Cir. 2011)).

While it is true that non-severe mental impairments assessed in step two do not "necessarily translate to a work-related functional limitation for the purposes of the RFC assessment," *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013), "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to

disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five," *Wells*, 727 F.3d at 1068–69. Rather, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence *supports each conclusion*, citing specific medical facts . . . and nonmedical evidence." *Id.* at 1069 (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)) (emphasis in original). An ALJ's failure to make specific findings at step four regarding what, if any, work-related limitations result from a claimant's non-severe mental impairments is reversible error. *See McFerran*, 437 F. App'x at 638 (remanding where the ALJ did not explain why he excluded any work-related limitations resulting from a claimant's non-severe mental impairments); *Farill v. Astrue*, 486 F. App'x 711, 712–13 (10th Cir. 2012) (finding error where "the RFC did not include any mental limitations, and the ALJ never explained why he chose not to include any mental limitations in the RFC, despite his previous assessment of mild limitations").

**B. The Court should find that the ALJ did not commit reversible error at step two.**

The ALJ found that Plaintiff had four medically determinable mental impairments: posttraumatic stress disorder, major depressive disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder. *See* AR 26 (noting that the record showed Plaintiff "received ongoing treatment" for these conditions). At step two, the ALJ found that these impairments were non-severe because they caused no more than a mild limitation in any of the four broad areas of mental functioning. *See* AR 26–27. The ALJ specifically found: (1) no limitation in understanding, remembering or applying information; (2) a mild limitation in interacting with others; (3) a mild limitation in concentrating, persisting or maintaining pace; and (4) a mild limitation in adapting or managing oneself. *Id.*

Plaintiff argues that the ALJ erred at step two in concluding that her mental impairments

were non-severe impairments. *See* Doc. 20 at 16–18. However, the Tenth Circuit has held that the ALJ's "failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Here, the ALJ found Plaintiff had several severe physical impairments at step two and continued through the sequential evaluation process. Therefore, I recommend finding that the ALJ's failure to find Plaintiff's mental impairments were severe impairments at step two is not reversible error under Tenth Circuit precedent.

### C. The Court should find that the ALJ failed to adequately consider Plaintiff's mental impairments in formulating her RFC.

Plaintiff argues that the ALJ failed to adequately consider her mental impairments and related symptoms in formulating her RFC. *See* Doc. 20 at 18–19. She asserts that the ALJ failed to explain how her "mental impairments, even if properly found [to be] non-severe, were factored into the ultimate RFC finding." *Id.* at 18. The Commissioner counters that the ALJ "adequately considered the evidence regarding Plaintiff's mental functioning and found the record did not support any mental limitations in the RFC." *See* Doc. 26 at 11. For the following reasons, I recommend finding that the ALJ erred at step four in failing to include, or at least explain the omission of, work-related limitations related to Plaintiff's mental impairments in Plaintiff's RFC.

Here, after finding that Plaintiff's mental impairments were non-severe at step two, the ALJ acknowledged that her step two assessment of Plaintiff's mental limitations was "not a residual functional capacity assessment," and that the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." AR 27. But the ALJ then failed to conduct the required detailed assessment of Plaintiff's mental limitations in formulating her RFC.

The ALJ engaged in a lengthy discussion to explain her formulation of Plaintiff's RFC, addressing the medical evidence in detail and with specific citations. *See* AR 28–31. But this discussion focused exclusively on Plaintiff's physical impairments. Specifically, the ALJ began her RFC analysis by summarizing Plaintiff's alleged symptoms due to her physical impairments. *See* AR 29. The ALJ then provided a detailed summary of the medical evidence in the record specific to Plaintiff's physical impairments. *See* AR 29–31 (discussing treatment records related to Plaintiff's rheumatoid arthritis and psoriatic arthritis, including clinical examinations, laboratory testing, and MRI imaging results). The ALJ also considered a June 2023 internal medicine consultative examination as well as Plaintiff's BMI scores and "consistent pattern of obesity." *See* AR 30–31. After reviewing the foregoing medical evidence, Plaintiff's function report, and her statements to treating providers regarding her physical activities of daily living, the ALJ assessed a sedentary RFC with additional limitations. The ALJ explained that

> [a]lthough the record does document some objective abnormalities, [Plaintiff] generally presented with otherwise preserved physical functioning on serial exams, including a normal gait, no acute distress, no motor weakness, normal motor strength, intact sensation, negative straight leg raise, normal Lachman's test, no patellar grind, and no edema of the lower extremities. Contrary to her subjective complaints, they are also inconsistent with her (1) documented and acknowledged improvement with continued therapeutic intervention; and (2) her ability to engage in ample activities of daily living without significant or marked restrictions, such as serving as a caregiver for her father, going to the gym multiple times a week; tending to her personal hygiene independently, preparing her own meals, driving, watching television/reading daily, and spending time with others.

AR 31 (internal citations omitted).

Notably missing from the ALJ's RFC analysis is any meaningful discussion or analysis regarding Plaintiff's mental impairments and related symptoms. In fact, the ALJ only made three brief references to Plaintiff's mental impairments in fashioning her RFC. First, she noted that Plaintiff alleged in her function report that she had difficulty with "memory, completing tasks,

concentration, understanding, following instructions, . . . and getting along with others." AR 29. Second, the ALJ observed that Plaintiff's mental status exam was "within normal limits" during the internal medicine consultative examination, and noted that the consultative examiner diagnosed Plaintiff with depression and anxiety. AR 30. Though she made these observations, the ALJ engaged in no further analysis of them—that is, she did not discuss whether or why she accepted or rejected this evidence, nor, critically, did she indicate whether or how she considered it to assess specific work-related mental "functions that [Plaintiff] has demonstrated that [she] can do, as well as any limitations of those functions." POMS DI § 24510.065(B)(1); SSR 96-8p, 1996 WL 374184, at *4–7. Third, the ALJ stated that "the medical evidence does not substantiate [Plaintiff's] allegations of debilitating pain and other incapacitating mental symptoms." AR 31. But again, the ALJ failed to specify the "medical evidence" she considered in reaching this conclusion, and she did not explain how that evidence failed to substantiate Plaintiff's alleged symptoms.

In short, the ALJ failed to include in the RFC a "thorough discussion and analysis of the objective medical and other evidence [related to Plaintiff's mental impairments], including [Plaintiff's] complaints of pain and other symptoms." SSR 96-8p, 1996 WL 374184, at *7. The ALJ also failed to "include a discussion of why [Plaintiff's] reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* Because the ALJ has failed to provide the Court with a sufficient basis to determine that she correctly applied these legal standards, I recommend finding that this legal error requires remand.

The Commissioner's arguments do not salvage the ALJ's flawed RFC assessment. The Commissioner argues that the "ALJ's RFC finding is supported by substantial evidence in the

record as a whole." Doc. 26 at 11. Then, the Commissioner points to record evidence that he argues supported the RFC and allegedly showed "the ALJ reasonably considered the evidence regarding Plaintiff's mental impairments." *Id.* at 11–14. For example, the Commissioner cites to the ALJ's finding that the state agency consultants' findings and Dr. Owen's opinion were inconsistent with Plaintiff's "generally normal mental functioning during exams," Plaintiff's activities of daily living, and her lack of "inpatient psychiatric hospitalizations." *See* Doc. 26 at 12. However, the Commissioner links together evidence regarding Plaintiff's mental impairments in a manner that the ALJ did not. "[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007). The Commissioner appears to be cherry-picking portions of the record evidence to invite the Court to draw a connection between that evidence and Plaintiff's ability to perform various mental job functions that the ALJ did not make. The Commissioner's post hoc discussion of the evidence regarding Plaintiff's mental impairments cannot compensate for the ALJ's failure to address significant probative evidence concerning the degree of Plaintiff's mental impairments.[6] *See Clifton v. Chater*, 79

[6] *See, e.g.*, AR 575–77 (provider's assessment in December 2019 that Plaintiff's "[p]yschological condition is worsening" after Plaintiff reported she "gets angry often, has mood swings[,] [f]eels irritable . . . [has] increased anxiety, [and] withdraws socially"); AR 573 (February 2020 visit where Plaintiff reported that she started "venlafaxine 37.5 for anxiety and depression" but "has not noticed much of a difference"); AR 627 (July 2020 visit where Plaintiff indicated that "[s]he has been on venlafaxine for about 4 months. She does not feel like it is helping. She has been on this for anxiety and depression. She is experiencing mood swings and feels irritable. She has been anxious when going out. She has a lack of motivation."); AR 649 (reporting in December 2020 that venlafaxine is "making her anxiety and depression worse. Patient reports very emotional, anxious and still depressed"); *id*. (reports having more panic episodes; "her mood has gradually worsened, she is feeling overly emotional, irritable and little things trigger her to where she becomes agitated. She states that she has generalized anxiety and excessive worry, also has anxiety around people and the thought of going out in public."); AR 661 (in February 2021, reporting mixed results from various medications for depression and anxiety, and stating that despite taking these medications, she "continues to feel like she gets irritable and annoyed

F.3d 1007, 1009–10 (10th Cir. 1996) (When evaluating a claimant's subjective symptom evidence, an ALJ must discuss not only "the evidence supporting [her] decision," but also "the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects."). More importantly, the Commissioner's arguments fail because my recommendation is not that the ALJ's decision is not supported by substantial evidence, but rather that the ALJ's step four analysis is legally insufficient.

The Commissioner also compares this case to *Suttles v. Colvin*, 543 F. App'x 824 (10th Cir. 2013). *See* Doc. 26 at 13. The Commissioner represents that in *Suttles*, "the Tenth Circuit affirmed where 'the ALJ discussed evidence relating to depression"' when assessing RFC 'and then pointedly omitted any limitation associated with that mental impairment' from the RFC finding.'" *Id.* (citing *Suttles*, 543 F. App'x at 826). Here, like in *Suttles*, the ALJ "pointedly omitted" any limitation associated with Plaintiff's mental impairments. But this case differs from *Suttles* because the ALJ here did not sufficiently discuss the specific evidence relating to Plaintiff's mental impairments when formulating her RFC.

To be clear, the error here is not in the ALJ's failure to include work-related limitations related to Plaintiff's mental impairments in the RFC, but rather in the ALJ's failure to explain their omission. *See Martinez*, 2024 WL 808868, at *12. While the ALJ did perform a step two analysis of Plaintiff's mental impairments, the step two analysis is not an RFC assessment and cannot substitute for the more detailed step four analysis. *See id.* at *8–9; *Farill*, 486 F. App'x at 713. I therefore recommend that the Court find that the ALJ's failure to adequately consider

easily[, and s]he also has trouble feeling motivated"); AR 681 (reporting in July 2021 that she "experiences occasional panic attacks"); AR 721–22 (showing "improvement/benefit from treatment" during September 2021 visit); AR 745 (reporting to internal medicine consultative examiner in July 2023 that her medications have resulted in some improvement, but she still gets panic attacks).

Plaintiff's mental impairments in formulating her RFC is legal error requiring remand.

**D. The Court should find that the ALJ's failure to address how Plaintiff's mental impairments impact her work-related mental functions was not harmless.**

I further recommend that the Court find that the ALJ's error was not harmless. The Court may excuse an ALJ's error as harmless where the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005). Courts still must be careful not "to supply a missing finding for the ALJ on legal or evidentiary matters that [she] did not consider because it risks violating the general rule against post hoc justification of administrative action." *Dye v. Barnhart*, 180 F. App'x 27, 31 (10th Cir. 2006) (quotations omitted). I recommend that the Court decline to supply the missing analysis here.

Notably, the Commissioner does not present a harmless error argument. Considering the record in this case, I also cannot "confidently say that *no* reasonable administrative factfinder, following the correct analysis" would not have found some degree of work-related mental limitations. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (emphasis added). Further,

> even if these limitations do not significantly limit [Plaintiff's] ability to do basic work activities, they may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of her claim, by preventing her from performing past relevant work or narrowing the range of other work she can still do.

*Martinez*, 2024 WL 808868, at *14 (citation modified) (internal quotations omitted). I therefore recommend that the Court find that the ALJ's error at step four was not harmless.

**E. The Court should deny Plaintiff's request for an immediate award of benefits.**

Plaintiff requests that the Court remand this case for an immediate award of benefits. Doc. 20 at 25; Doc. 27 at 9. The Commissioner opposes Plaintiff's request. Doc. 26 at 17 n.7. "When a decision of the Secretary is reversed on appeal, it is within this court's discretion to

remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). Among the relevant factors the court may consider in making this decision are (1) "the length of time the matter has been pending" and (2) "whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (citation modified). The Court does not "take its discretion [to remand for an immediate award of benefits] lightly and is generally opposed to reaching beyond its ordinary role in these cases." *Romero v. Kijakazi*, No. 22-cv-1237-MDB, 2023 WL 4545158, at *5 (D. Colo. July 7, 2023).

In her briefing, Plaintiff fails to present any argument related to her request for an immediate award of benefits. Plaintiff only makes a cursory request that the Court should remand "solely for calculation and awarding of benefits" in her final "Statement of Relief Requested." *See* Doc. 20 at 25; Doc. 27 at 9. Because Plaintiff failed to support her request for an immediate award of benefits with any legal authority or analysis, I recommend the Court decline to reach "beyond its ordinary role" and remand to the Commissioner for further administrative proceedings. *See Romero*, 2023 WL 4545158, at *5.

## VI. Recommendation

For the foregoing reasons, I recommend that the Court find that the ALJ erred in analyzing Plaintiff's medically determinable mental impairments at step four, and that this error was not harmless. I therefore recommend that the Court GRANT Plaintiff's Motion (Doc. 20), and reverse and remand this matter to the Commissioner for further proceedings. The Court need

not address Plaintiff's other claims of error, as they may be affected by the ALJ's treatment of this case on remand. *See Watkins*, 350 F.3d at 1299.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. *Id*. In other words, if no objections are filed, no appellate review will be allowed.**

JENNIFER M. ROZZONI
United States Magistrate Judge